IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

EMBER TECHNOLOGIES, INC., a Delaware corporation,

Plaintiff,

v.

NEXTBOOM, INC., a Colorado corporation,
NEXTMUG, LLC, a Colorado Limited Liability Company,

Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

This is an action for patent infringement in which plaintiff, Ember Technologies, Inc. ("Ember"), by its counsel, Bryan Cave Leighton Paisner LLP, makes the following allegations in support of its Complaint against defendant, Nextboom, Inc. and Nextmug, LLC ("Defendants"):

**PARTIES**

1. Ember is a Delaware corporation with its principal place of business at 4607 Lakeview Canyon Rd, #500, Westlake Village, California, 91361. Ember draws on its proprietary technology to innovate and develop various temperature-controlled drinkware, such as temperature-controlled mugs. Among other things, Ember's drinkware products provide advanced functional properties that allow users to set and maintain precise drink temperature for extended periods of time. As a result of its innovations, Ember has been awarded over fifteen U.S. patents and has become the market leader in the temperature-controlled drinkware industry.

2. On information and belief, Nextboom, Inc. is a Colorado corporation with its principal place of business at 6531 Columbine Ct, Niwot, Colorado, 80503.

3. On information and belief, Nextmug LLC is a Colorado Limited Liability Company with its principal place of business at 6531 Columbine Ct, Niwot, Colorado, 80503.

4. Defendants manufacture, import, offer for sale, sell, and/or distribute temperature-controlled drinkware, including temperature-controlled mugs, that infringe Ember's patents.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1, *et seq.* Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. Defendants are subject to this Court's personal jurisdiction because they are incorporated in, and have a principal place of business in, the State of Colorado, and also because they are doing and have done substantial business in the District of Colorado, including business related to the development, sale and/or distribution of infringing products, and are committing and have committed acts of infringement from which they have derived and continue to derive substantial revenue.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) at least because Defendants reside in this District, maintain a principal place of business in this District, do business in the State of Colorado and this District, and have committed and continue to commit acts of infringement in this District.

## BACKGROUND

### Ember's Temperature-Controlled Drinkware Innovations

8. Ember is a leading manufacturer and innovator of temperature-controlled drinkware products, including smart mugs, travel mugs, and tumblers designed to actively heat

or cool beverages to a user-selected temperature and maintain that temperature over an extended period.

9. Ember's business model is centered on developing proprietary technology that allows consumers to enjoy a hot beverage at their preferred temperature from the first sip to the last, eliminating the need to repeatedly reheat a beverage as it naturally cools, all while maintaining the look and feel of traditional drinkware.

10. Ember was founded by Clayton Alexander, a nationally recognized inventor and serial entrepreneur who is a named inventor on several of the patents asserted herein. Alexander used his experience and background in technology to develop Ember's proprietary active heating and cooling drinkware, growing Ember into a global brand and market leader.

11. Ember has devoted substantial time, effort, and resources to designing and developing novel drinkware architectures, including mug bodies with a chamber for receiving liquid, a cavity housing a heating and/or cooling system, batteries or other power storage devices, sensors capable of detecting the presence of liquid in the chamber, and circuitry and user interfaces configured to control heating or cooling elements to reach and maintain a selected temperature setting.

12. As a result of its significant innovations, Ember has been granted numerous patents by the United States Patent and Trademark Office (the "Patent Office"), which protect various aspects of its novel temperature-controlled drinkware technology and product designs.

13. Among the patents Ember has been awarded is U.S. Patent No. 12,185,870 ("the '870 Patent"), entitled "Drinkware with Active Temperature Control." The '870 Patent was filed on October 18, 2023, and duly and legally issued on January 7, 2025. Ember is the owner by

assignment of the ’870 Patent, with ownership of all substantial rights, including the right to exclude others and to sue and recover damages for past and future infringement thereof. A true and correct copy of the ’870 Patent is attached hereto as Exhibit A.

14. In general, the ’870 Patent discloses and claims, *inter alia*, an actively heated mug with a bottom recess having electrical contacts for a charging base, a heating element on the base’s bottom surface, batteries and circuitry in the cavity, and a user interface. As disclosed in the ’870 Patent, the mug also includes one or more buttons used to cycle among multiple user-selected temperature settings each time the button(s) are pressed, and turn off the heating element on a subsequent press — a single button (or small set of buttons) that toggles sequentially through temperature settings and then off.

15. Ember’s patents on drink-ware technology also include U.S. Patent No. 11,771,260 (“the ’260 Patent”), entitled “Drinkware Container with Active Temperature Control.” The ’260 Patent was filed on October 28, 2022, and duly and legally issued on October 3, 2023. Ember is the owner by assignment of the ’260 Patent, with ownership of all substantial rights, including the right to exclude others and to sue and recover damages for past and future infringement thereof. A true and correct copy of the ’260 Patent is attached hereto as Exhibit B.

16. In general, the ’260 Patent discloses and claims, *inter alia*, an actively heated or cooled mug with a body/cavity/bottom-member construction housing a heating or cooling system (heating/cooling elements, power storage, control circuitry, and a liquid-presence sensor), where the circuitry turns on power once liquid is detected and automatically turns off power once a signal indicates the liquid has dropped below a threshold level or is fully depleted — an automatic liquid-responsive on/off control mechanism.

17. Ember's patents on this technology also include U.S. Patent No. 11,771,261 ("the '261 Patent"), entitled "Drinkware Container with Active Temperature Control." The '261 Patent was filed on November 29, 2022, and duly and legally issued on October 3, 2023. Ember is the owner by assignment of the '261 Patent, with ownership of all substantial rights, including the right to exclude others and to sue and recover damages for past and future infringement thereof. A true and correct copy of the '261 Patent is attached hereto as Exhibit C.

18. The '261 Patent discloses and claims, *inter alia*, an actively heated mug with a cylindrical body construction (an inner circumferential wall with a wider proximal portion and narrower distal portion, and an annular gap to the outer wall), heating elements wrapped circumferentially around the distal (narrower) portion, power storage, and control circuitry, combined with a user interface having selection members actuatable to (a) turn off the heating elements or (b) adjust among multiple user-selected temperature settings, plus a "hidden till-lit" visual display screen showing temperature. The '261 Patent further discloses and claims the physical user-interface (selection members/touch sensors) for turning off the heater and cycling among temperature settings, combined with the till-lit display and a tapered double-wall body geometry.

19. Ember's patents on drink-ware technology also include U.S. Patent No. 10,995,979 ("the '979 Patent"), entitled "Heated or Cooled Drinkware." The '979 Patent was filed on November 29, 2017, and duly and legally issued on May 4, 2021. Ember is the owner by assignment of the '979 Patent, with ownership of all substantial rights, including the right to exclude others and to sue and recover damages for past and future infringement thereof. A true and correct copy of the '979 Patent is attached hereto as Exhibit D.

20. In general, the ’979 Patent discloses and claims, *inter alia*, an active temperature control system that heats a liquid. In some embodiments, the ’979 Patent discloses and claims a container with a chamber, heating elements, control circuitry, and a sensor that senses liquid temperature, where the circuitry turns off/maintains-off power when the sensed temperature exceeds a set point (letting it cool) and turns heating back on before the temperature drops back to that set point.

21. Ember’s innovative drinkware designs are also protected by design patents issued by the Patent Office, including U.S. Design Patent No. D822,440 (“the ’D440 Patent”), entitled “Drinking Container,” which duly and legally issued on July 10, 2018. Ember is the owner by assignment of the ’D440 Patent, with ownership of all substantial rights, including the right to exclude others and to sue and recover damages for past and future infringement thereof. A true and correct copy of the ’D440 Patent is attached hereto as Exhibit E.

22. Ember’s design patents on this technology also include U.S. Design Patent No. D922,145, entitled “Drinking Container,” which duly and legally issued on June 15, 2021. Ember is the owner by assignment of the ’D145 Patent, with ownership of all substantial rights, including the right to exclude others and to sue and recover damages for past and future infringement thereof. A true and correct copy of the ’D145 Patent is attached hereto as Exhibit F.

23. The Patent Office examined each of the patents referenced above (collectively the “Asserted Patents”) and, after thorough examination, found that the inventions and designs described and claimed therein are new and not obvious in light of the prior art.

24. Ember has sold and continues to sell products that embody the inventions and designs claimed in the Asserted Patents, including its Ember® ceramic mugs and Ember® travel

mugs. As a result of its proprietary technology and products, Ember has become widely known as a pioneer and market leader in temperature-controlled drinkware, and Ember's products have received considerable media attention, industry recognition, and design awards, and have achieved significant commercial success.

25. For example, TIME Magazine named the Ember Mug one of its 25 Best Inventions of 2017. *See* https://time.com/5023212/best-inventions-of-2017/. The article credited Ember and founder/CEO Clay Alexander with engineering a stainless-steel, white-ceramic-coated mug that keeps coffee or tea at a precise temperature for extended periods of time.

26. Furthermore, Ember was recognized with a Better Future Award for its Ember Mug product design, an award celebrating creative and innovative design of a component or overall product, with consideration given to human usage, aesthetics, materials selection, and the resolution of assembly, manufacturing, and function. *See* https://betterfutureawards.com/sfo16/project.asp?ID=15286 .

27. Moreover, in the 2025 USA TODAY 10 Best Readers' Choice Awards, the Ember Travel Mug 2 was named Runner-up for Best Travel Coffee Mug/Tumbler, praised for, *inter alia*, its adjustable temperature control (tap to raise or lower drink temperature). *See* https://10best.usatoday.com/awards/ember-travel-mug-2/ .

28. In short, Ember is recognized for its innovative temperature-controlled drinkware products.

**Defendants' Infringing Conduct**

29. Defendants manufacture, import, market, offer for sale, and/or sell temperature-controlled, self-heating mugs under the name "Nextmug," which are designed to actively heat a

beverage to a user-selected temperature setting and maintain that temperature over an extended period. The Nextmug line of products includes: the “Nextmug” (MMA-1122), the “Nextmug Go” (MTB-1122), the “Nextmug Plus” (MMP-1122), and the “Nextmug Ultra” (MMU-1101). These products are collectively referred to herein as the “Accused Products.”

30. Defendants market the Accused Products as, *inter alia*, a “self-heating mug” and “Temperature-Controlled, Self-Heating Mug,” and represent in marketing and product materials that the Nextmug’s “long-lasting battery & sensors maintain ideal temperature,” that its “LED lights display battery life & real-time temperature,” and that the product includes “Auto-off technology” that automatically shuts off the heating elements when the mug is empty or has not been picked up after a period of time. According to Defendants’ website, the Accused Products “Keep your hot beverage at the perfect temperature. Simply select Warm (130°), Hot (140°), or Piping (150°) and enjoy for hours.” *See* www.nextmug.com.

31. The Accused Products are touted as having “Smart Mug Technology” that provides a “Long-lasting battery [that] maintains your ideal temperature” and “LED lights [that] display battery life & real-time temperature,” as well as a “Spill-Resistant Lid & Charging Coaster.” *See* www.nextmug.com. Defendants also tout a simple “On-board Control Button” that “easily turns the mug On/Off & sets temperature.” *See* www.nextmug.com.

32. The Accused Products include, among other things: (a) a mug or beverage container body defining a chamber configured to receive and hold a liquid; (b) a bottom portion defining a recess and a cavity housing a heating system; (c) one or more heating elements configured to actively heat the chamber; (d) one or more batteries or other power storage devices; (e) circuitry configured to control the operation of the heating elements to heat the

liquid in the chamber to a user-selected temperature setting; (f) one or more sensors configured to detect motion and/or the presence of liquid in the chamber, with the circuitry configured to turn on power to the heating elements after liquid is detected and to automatically turn off power to the heating elements when the liquid has dropped below a predetermined level or has been depleted; and (g) a user interface, including a control button and illuminated indicator lights, that allows a user to select and adjust among multiple temperature settings ("Warm," "Hot," and "Piping") and that displays information related to the sensed temperature of the beverage.

***The Nextmug (MMA-1122) Product***

33. By way of example, Defendants' Nextmug product (MMA-1122) is shown below with annotations to highlight certain elements. The Nextmug product (MMA-1122) comprises a generally cylindrical mug body having a chamber between a proximal end of the body and a base. The chamber is configured to receive and hold a liquid. A bottom portion of the Nextmug product (MMA-1122) also defines a recess with electrical contacts.




34. The Nextmug product (MMA-1122) also comprises a cavity defined between the base and bottom portion of the mug. Within that cavity, the Nextmug product (MMA-1122)

comprises one or more batteries and a circuitry configured to control operation of heating elements.




35. The Nextmug's circuitry is configured to turn on power to its heating element upon detecting the presence of liquid in the chamber, and begin actively heating the liquid before its temperature drops below the user-selected temperature setting, such that the heating system operates to maintain the beverage at the selected temperature.

36. The Nextmug product (MMA-1122) also comprises heating elements disposed on a bottom surface of the base that are configured to actively heat at least a portion of the chamber.




37. The Nextmug's heating element is attached to and disposed adjacent the outer surface of a circumferential wall of the mug body, within an annular gap or cavity formed between the mug's inner and outer circumferential walls.

38. The Nextmug product (MMA-1122) also comprises a user interface electrically connected to the circuitry to control operation of the heating element. The user interface adjusts temperature settings to multiple user selected heating settings in response to a button on the Nextmug being successively pressed. The same button turns off the heating element in response to being pressed an additional time.




### *The Other Accused Products*

39. The other Accused Products, (*i.e.*, the Nextmug Plus (MMP-1122), Nextmug Go (MTB-1122), and Nextmug Ultra (MMU-1101)) similarly comprise, among other things, a mug body having a chamber to hold a liquid and a bottom portion comprising a recess with electrical contacts that docks on a base. For example:

*Nextmug Plus (MMP-1122)*:






*Nextmug Go (MTB-1122)*:





*Nextmug Ultra (MMU-1101)*:





40. Each of these Accused Products also comprises a user interface electrically connected to circuitry to control operation of a heating element. The user interface adjusts temperature settings to multiple user selected heating settings in response to a button on the

Accused Products being successively pressed. The same button turns off the heating element in response to being pressed an additional time. For example:

*Nextmug Plus (MMP-1122)*

**Turning Mug On**

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)




**Adjusting Temperature**

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

*Nextmug Go (MTB-1122)*

## Turning Mug On

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)




## Adjusting Temperature

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

*Nextmug Ultra (MMU-1101)*:




41. On information and belief, the Nextmug Plus (MMP-1122), Nextmug Go (MTB-1122), and Nextmug Ultra (MMU-1101), products are internally configured in the same manner as the Nextmug (MMA-1122) product shown and described *supra*. Specifically, on information and belief, each of these Accused Products comprise, *inter alia*, a cavity defined between the base and bottom portion of the mug containing one or more batteries, a heating element that actively heats at least a portion of the chamber, and a circuitry configured to control operation of heating elements.

42. Each of these Accused Products' user manual describes an identical chamber, docking/charging architecture, Auto-Off Sensor, Battery Life Indicator, and single-button, multi-setting temperature control scheme, in language materially identical to the Nextmug (MMA-1122) product's user manual. For example, the Accused Product's manuals state, in nearly

identical language, that pushing the Control Button once turns the unit on and sets it to the Warm setting. The Accused Product's manuals all describe the identical three-setting scheme — Warm (130 degrees), Hot (140 degrees), Piping (150 degrees) — selected by the same Control Button. The Accused Product's manuals all state that each push of the Control Button cycles through the temperature settings, with a fourth press turning the unit off. The Accused Product's manuals all describe an identical Battery Life Indicator (Low/Medium/High), including the same low-battery pulsing behavior below 10%. The Accused Product's manuals describe the same charging architecture: a docking base plugged into a standard 120-volt outlet, with indicator lights pulsing while charging and turning solid when fully charged. The Accused Product's manuals also describe the same Auto-Off Sensor: lights blink after ~10 seconds and the unit shuts off after 60 seconds with no liquid present; with liquid present, it shuts off after 2 hours undocked and undisturbed.

43. Defendants also market all the Accused Products as using the same "Smart Mug Technology" battery-and-sensor architecture and the same on-board Control Button architecture as the Nextmug (MMA-1122) product. For example, Defendants' marketing describes all the Accused Products as having "Long-lasting battery & sensors [that] maintain ideal temperature," and separately touts an "On-board Control Button" that "easily turns mug On/Off & sets temperature." Defendants' product materials also state that lids are interchangeable "across all Nextmug models" and that "All Nextmug products...are products of Nextboom, Inc.," warranted on identical terms, confirming a common product-family design. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130

degrees), “Hot” (140 degrees) or “Piping” (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours.” *See* https://nextmug.com/pages/help-center .

44. The external physical arrangement of these Accused products — including the placement of the control button, temperature and battery indicator lights, and docking coaster interface — also mirrors that of the Nextmug (MMA-1122) product. For example, the control button, Warm/Hot/Piping indicator lights, and base/docking-coaster charging interface are positioned on these Accused Products in the same manner as on the Nextmug, (MMA-1122) product, using the same style of docking coaster shown throughout Defendants’ marketing and product materials. All the Accused Products have a generally cylindrical mug body with a control button and illuminated indicator lights positioned near the base.

45. These user manuals, external physical/mechanical characteristics, and marketing materials confirm that Defendants’ Accused Products all share the same internal configuration, circuitry, user interface, and functionality, which infringes Ember’s Asserted ’870, ’260, ’261, and ’979 Patents.

46. Defendants’ Nextmug product line also infringes Ember’s design patents. The ornamental design of the Accused Products, including their overall shape, proportions, and bottom configuration, is substantially the same as, and would deceive an ordinary observer familiar with the prior art into believing it is the same as, the ornamental designs claimed in the ’D440 and ’D145 Patents.

47. Defendants have infringed and continue to infringe the Asserted Patents by making, using, selling, offering for sale, and/or importing the Accused Products, and/or by

having the Accused Products made, sold, offered for sale, distributed, or imported on their behalf by third parties, including online retail platforms and other resellers and distributors.

**Ember's Actual and Constructive Notice to Defendants of Infringing Conduct**

48. Prior to filing this lawsuit, Ember attempted in good faith to resolve this dispute without litigation.

49. In connection with these pre-suit efforts, Ember provided notice to Defendants that Defendants' products were infringing Ember's patents.

50. On or about April 10, 2024, Ember sent correspondence, via its counsel at Kirkland and Ellis LLP, to Defendants notifying Defendants of Ember's intellectual property rights, including specifically identifying U.S. Patent Nos. 10,995,979; 11,771,260; 11,771,261; and D822,440 and explaining that Defendants infringe those rights (the "April 10th Letter").

51. Defendants, through counsel, responded to Ember's notice on April 29, 2024. Ember and Defendants' counsel thereafter exchanged further correspondence dated July 9, 2024, and August 16, 2024, in which Ember reasserted and elaborated upon its charges of infringement. The parties also continued to engage in communications, including several meetings, related to Defendants' infringement through 2025 and into at least early 2026.

52. Ember's April 10th Letter, and/or the correspondence that followed it, constituted an affirmative communication by Ember to Defendants of a specific charge of infringement of the Asserted Patents by Defendants' Nextmug product, sufficient to satisfy actual notice under 35 U.S.C. § 287(a).

53. Since receiving the April 10th Letter, Defendants have continued to manufacture, market, distribute, offer for sale, and/or sell the Accused Products without obtaining a license from Ember.

54. Furthermore, at all relevant times, Ember has consistently and continuously marked substantially all units of its products (Ember Mugs, Ember Cups, and Ember Tumblers) that have been sold or offered for sale in the United States in compliance with the virtual marking provisions of 35 U.S.C. § 287(a).

55. Ember's virtual marking website located at http://ember.com/patents is, and at all relevant times has been, accessible to the public free of charge, and associates Ember's products with the Ember patents that cover them.

56. Ember began this marking practice on or about August 23, 2019, and has maintained substantially consistent and continuous marking of the Ember products via the associated virtual marking webpage since that date, updating the webpage as patents issued, were licensed, or expired.

57. By virtue of Ember's marking of its products, Defendants and the public at large have been on constructive notice that the Ember mug is covered by the Asserted Patents, satisfying 35 U.S.C. § 287(a).

**Defendants' Willful Infringement**

58. Defendants have had actual knowledge of the Asserted Patents and of Ember's infringement allegations at least since receipt of the April 10th Letter, and have continued to make, use, offer for sale, and/or sell the Accused Products despite that knowledge. Defendants' continued infringing conduct after receiving detailed, specific notice of Ember's patents and

Defendants' infringement thereof constitutes willful, wanton, and deliberate infringement by Defendants, entitling Ember to enhanced damages under 35 U.S.C. § 284 and to a finding that this case is exceptional under 35 U.S.C. § 285.

**Defendants' Infringement Irreparably Harms Ember**

59. Ember is harmed by Defendants' unauthorized use of Ember's patented technologies and designs in a manner that cannot be remedied by monetary damages alone.

60. On information and belief, Defendants have received substantial revenue and has increased their market share by selling and distributing (and having others sell and distribute) the Accused Products, which practice and obtain the many benefits of the technology and/or designs claimed in the Asserted Patents, without incurring the substantial costs Ember incurred to research, develop, and patent that technology, and without paying Ember any license or royalty for the use of Ember's patented inventions.

61. Defendants and Ember are direct competitors in the market for temperature-controlled drinkware, and Defendants have marketed the Accused Products, including through paid third-party articles, by directly comparing them to and touting purported advantages of the Accused Products over Ember's products.

62. Defendants' infringement has caused and continues to cause Ember to suffer irreparable harm, including lost sales, lost business opportunities, lost market share, erosion of the price premium associated with Ember's patented innovations, damage to Ember's goodwill and reputation (*e.g.*, as an innovator in the industry), customer confusion, and/or dilution of the exclusivity and distinctiveness of Ember's patented product designs.

63. Even if Defendants were to subsequently pay past-due royalties, lost profits, or other damages, Defendants would likely continue their infringing conduct and continue to enjoy the market share and customer relationships they have developed and will continue to develop while infringing the Asserted Patents. Due to the difficulty in quantifying the irreparable harm to Ember, and predicting whether, and to what extent, Ember can recover this lost market share, pricing, goodwill, reputation, and brand distinction, Ember's harm cannot be fully compensated by monetary damages alone, and Ember is entitled to injunctive relief.

**COUNT I**
**(Infringement of U.S. Patent No. 12,185,870)**

64. Ember incorporates by reference and realleges the averments set forth in the preceding paragraphs as though fully set forth herein.

65. On January 7, 2025, the Patent Office duly and legally issued the '870 Patent. Ember is the owner, by assignment, of all right, title, and interest in and to the '870 Patent, including the right to recover damages for past and future infringement.

66. Defendants have infringed and continue to infringe (literally and/or under the doctrine of equivalents) the '870 Patent in this District and throughout the United States in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, and/or causing others to make, use, sell, offer for sale, and/or import, the Accused Products, which practices one or more claims of the '870 Patent.

67. For example, Defendants have infringed and continue to infringe the '870 Patent by making, using, selling, offering for sale, and/or importing the Accused Products that includes each and every element recited in at least claim 1 of the '870 Patent as outlined below.

68. The Accused Products are all actively heated mugs that include "a mug body having a chamber between a proximal end of the body and a base, the chamber configured to receive and hold a liquid," as recited in claim 1. For example, Defendants' marketing material describe the Accused Products as being "Temperature-Controlled Self Heating Mugs" and a "Heated Coffee Mug". *See* www.nextmug.com. For example, the images below show the Accused Products holding a liquid beverage in the chamber of a body:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




69. The Accused Products are configured to have a "cavity defined between the base and a bottom portion of the mug" with "one or more batteries disposed in the cavity" and "circuitry disposed in the cavity and configured to control an operation of the one or more heating elements," as required by claim 1. For example, the images below show the Accused Products comprising a cavity between the base of the bottom of the mug with a battery disposed in the cavity and circuitry configured to control operation of heating elements disposed in the cavity:

Nextmug (MMA-1122):




Nextmug Plus (MMP-1122):




Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




70. The Accused Products' circuitry turns on power to its heating element upon detecting the presence of liquid in the chamber, and that the Accused Products begin actively heating the liquid before its temperature drops below the user-selected temperature setting, such that the heating system operates to maintain the beverage at the selected temperature.

71. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130 degrees), "Hot" (140 degrees) or "Piping" (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours." *See* https://nextmug.com/pages/help-center.

72. The Accused Products are also configured to have the "bottom portion defining a recess with electrical contacts configured to receive a raised portion of a charging base with electrical contacts," as required by claim 1. For example, images found in Defendants' marketing material show a recess in the bottom of the Accused Products with metallic electrical contacts

centrally located. Those electrical contacts match the position of the electrical contracts present on the base.

Nextmug (MMA-1122):




Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):







Nextmug Ultra (MMU-1101):







73. Defendants' website also expressly states that the Accused Products "rest[] on the Docking Coaster while charging." *See* https://nextmug.com/pages/faqs.

74. The Accused Products are also configured to have "one or more heating elements disposed on a bottom surface of the base and configured to actively heat at least a portion of the chamber," as required by claim 1. For example, the images below show the Accused Products have a heating element in contact with the mug surface that, when activated, can heat the bottom portion of the chamber that holds a liquid:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):



75. Defendants' website states that the Accused Products are intended to keep liquid in the mug heated. For example, the website states "Nextmug (14 oz) keeps coffee, tea, and other daily drinks at your perfect temperature from the first sip to the last" and "Keep your hot beverage at the perfect temperature. Simply select Warm (130°), Hot (140°), or Piping (150°) and enjoy for hours." *See* https://nextmug.com/products/nextmug .

76. The Accused Products are also configured to have "a user interface electrically connected to the circuitry and having one or more buttons," as required by claim 1. For example, Defendants' marketing material touts a "super simple…On-board Control Button" that "easily turns the mug On/Off & sets temperature. Defendants' website also states that pushing the Control Button selects the desired temperature. For example:

Nextmug (MMA-1122):




Nextmug Plus (MMP-1122):




Nextmug Go (MTB-1122):




Nextmug Ultra (MMU-1101):




*See, e.g.,* https://nextmug.com/products/nextmug.

77. The control button on the Accused Products is configured to "to adjust a temperature setting to multiple user selected temperature settings in response to the one or more buttons being pressed multiple times to control the operation of the one or more heating elements to heat the liquid in the chamber to the user selected temperature setting," as required by claim 1. For example, each of the user manuals for the Accused Products describe that pressing the control button once turns on the mugs and activates the "Warm" setting. The user manuals further state that "[e]ach time you press the Control Button, it will cycle through the temperature settings on the mug." The Accused Products user manuals further show the three temperature settings of "Warm", "Hot", and "Piping" are toggled upon pressing the button. For example, the user manual for the Accused Products shows:

Nextmug (MMA-1122):

**Turning Mug On**

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)




**Adjusting Temperature**

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

*See, e.g.,* https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712 .pdf?v=1725648971

Nextmug Plus (MMP-1122):

**Turning Mug On**

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)



Press once to turn On & activate Warm setting

**Adjusting Temperature**

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

Nextmug Go (MTB-1122):

**Turning Mug On**

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)



Press once to turn On & activate Warm setting

**Adjusting Temperature**

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

Nextmug Ultra (MMU-1101):


Turning Mug On

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)



Adjusting Temperature

Press Control Button to select your perfect Temperature Setting:



Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

78. The control button on the Accused Products is also configured to "turn off the one or more heating elements in response to the one or more buttons being pressed another time" as required by claim 1. Specifically, the user manual for each of the Accused Products teaches that "[e]ach time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug off."

79. Similarly, the Defendants' website states: "[a]ll Nextmug products work the same by pressing the Control Button (immediately under the Nextmug logo on the product) as follows: -Press once to turn your Nextmug On - this will also set the mug to the "Warm" setting (130 degrees) -Press twice to turn your Nextmug to the "Hot" setting (140 degrees) -Press a third time to set your Nextmug to the "Piping" setting (150 degrees) -Press a fourth time to turn your Nextmug Off". *See* https://nextmug.com/pages/frequently-asked-questions.

80. As demonstrated above, the Accused Products include components and features that satisfy each and every limitation recited in, and, therefore, infringe, claim 1 of the ’870 Patent.

81. As a direct and proximate result of Defendants’ infringement of the ’870 Patent, Ember has suffered and continues to suffer damage. Ember is entitled to recover damages from Defendants to compensate for such infringement, including lost profits from lost sales, lost profits due to price erosion, and/or royalties, in an amount to be determined at trial, but in no event less than a reasonable royalty, and all other damages permitted pursuant to 35 U.S.C. § 284.

82. Defendants’ ongoing acts of infringement of the ’870 Patent have been committed and are being committed with full knowledge of Ember’s rights in the ’870 Patent, and Defendants’ have acted and are continuing to act despite an objectively high likelihood that Defendants’ actions constitute infringement of the ’870 Patent and Defendants knew or should have known of that objectively high risk. Defendants’ infringement of the ’870 Patent has and continues to be willful and deliberate, entitling Ember to enhanced damages under 35 U.S.C. § 284.

83. Defendants’ acts of infringement have caused and will continue to cause irreparable injury to Ember, for which Ember has no adequate remedy at law, unless and until Defendants are enjoined from further infringement by this Court pursuant to 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties, a permanent injunction is warranted and would be in the public interest.

**COUNT II**
**(Infringement of U.S. Patent No. 11,771,260)**

84. Ember incorporates by reference and realleges the averments set forth in the preceding paragraphs as though fully set forth herein.

85. On October 3, 2023, the Patent Office duly and legally issued the ’260 Patent. Ember is the owner, by assignment, of all right, title, and interest in and to the ’260 Patent, including the right to recover damages for past and future infringement.

86. Defendants have infringed and continue to infringe (literally and/or under the doctrine of equivalents) the ’260 Patent in this District and throughout the United States in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, and/or causing others to make, use, sell, offer for sale, and/or import, the Accused Product, which practice one or more claims of the ’260 Patent.

87. For example, Defendants have infringed and continue to infringe the ’260 Patent by making, using, selling, offering for sale, and/or importing its Accused Products, that include each and every feature recited in at least claim 1 of the ’260 Patent.

88. The “Nextmug” (MMA-1122), the “Nextmug Go” (MTB-1122), the “Nextmug Plus” (MMP-1122), the “Nextmug Ultra” (MMU-1101) are each an “actively heated or cooled mug” comprising a “body” that comprises “a circumferential wall having a side surface and a base having a top surface, the side surface and the top surface defining a chamber configured to receive and hold a liquid,” as required by claim 1. Defendants’ marketing material describes the Accused Products as being “Temperature-Controlled Self Heating Mugs” and a “Heated Coffee Mug” and show images of mugs with circumferential wall, base, and surfaces that are configured to hold a liquid, such as coffee. *See* www.nextmug.com. For example:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):




Nextmug Ultra (MMU-1101):




89. The Accused Products are also configured to have "a bottom portion that defines a recess between a bottom edge of the body and the base," as required by claim 1. Images of the Accused Products show a recess in the bottom with metallic electrical contacts centrally located. For example:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):




Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




90. The Accused Products are also configured to have "a bottom member attached to the bottom portion to define a cavity between the bottom member and the base," as required by claim 1. For example, as shown in the images of the Accused Products, below, a bottom member defines a cavity (holding other component parts) that is attached to the bottom portion of the mug body:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):







Nextmug Go (MTB-1122):






Nextmug Ultra (MMU-1101):





91. The cavity of the Accused Products is also configured to have "a heating or cooling system disposed in the cavity" comprising "one or more heating or cooling elements configured to actively heat or cool at least a portion of the chamber," as required by claim 1. For example, the Accused Products have a heating element in contact with the mug surface that, when activated, can heat the bottom portion of the chamber that hold a liquid:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):



92. Defendants' website states that the products are intended to keep liquid in the mug heated. For example, the website states "Nextmug (14 oz) keeps coffee, tea, and other daily drinks at your perfect temperature from the first sip to the last" and "Keep your hot beverage at the perfect temperature. Simply select Warm (130°), Hot (140°), or Piping (150°) and enjoy for hours." *See* https://nextmug.com/products/nextmug .

93. The heating system of the Accused Products is also configured to have "one or more power storage devices," as required by claim 1. For example, as shown below, the Accused Products comprise a battery disposed in the cavity of the mug:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




94. The manuals for the Accused Products describe a "Battery Life Indicator" showing the "battery level at Low Medium or High" and states that "[w]hen fully charged and using the Spill-Resistant Lid, your mug will maintain its temperature for up to several hours while undocked." *See, e.g.*, https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971.

95. The heating system of the Accused Products also has "circuitry configured to control an operation of the one or more heating or cooling elements to heat or cool the liquid in the chamber to a predetermined temperature setting or user selected temperature setting," as required by claim 1. For example, as shown below, the Accused Products comprise circuity disposed in the cavity of the mug:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




96. The Accused Products' circuitry turns on power to its heating element upon detecting the presence of liquid in the chamber, and the Accused Products begin actively heating the liquid before its temperature drops below the user-selected temperature setting, such that the heating system operates to maintain the beverage at the selected temperature. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130 degrees), "Hot" (140 degrees) or "Piping" (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours." *See* https://nextmug.com/pages/help-center .

97. The user manuals for the Accused Products state that the "mug will calibrate the temperature of your beverage to the selected Temperature Setting" and that the mug will "maintain Temperature Setting". *See* https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971. For example:

Nextmug (MMA-1122):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.




Light sensor of current temperature will pulse to indicate beverage is cooling.




Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

Nextmug Plus (MMP-1122):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.




Light sensor of current temperature will pulse to indicate beverage is cooling.




Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

Nextmug Go (MTB-1122):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.




Light sensor of current temperature will pulse to indicate beverage is cooling.




Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

Nextmug Ultra (MMU-1101):




98. The heating system of the Accused Products is also configured to have "one or more sensors configured to detect a presence of a liquid in the chamber, the circuitry configured to turn on power to the heating or cooling elements after said liquid is detected by the one or more sensors, the circuitry further configured to automatically turn off power to the heating or cooling elements upon receiving a signal indicating that the liquid in the chamber has dropped below a predetermined liquid level or been depleted completely," as required by claim 1.

99. For example, the user manuals of the Accused Products state that the mug has an "Auto-Off Sensor" that is configured to turn the mug on or off based on sensed liquid. The manuals state "[i]f the mug is On but liquid is not present, all lights will blink simultaneously after approximately 10 second and the mug will automatically turn Off after 60 seconds." *See, e.g.*, https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf ?v=1725648971. The manual also states that "[i]f the mug is On and liquid is present, the mug

will automatically turn Off when it has not been moved for 2 hours while docked." *Id.* Defendants' website also states that "[t]he on-board computer will even turn off the mug automatically when it's empty or hasn't been picked up after 2 hours." *See* https://nextmug.com/pages/faqs.

100. As demonstrated above, the Accused Products include components and features that satisfy each and every limitation recited in, and, therefore, infringe, claim 1 of the '260 Patent.

101. As a direct and proximate result of Defendants' infringement of the '260 Patent, Ember has suffered and continues to suffer damage. Ember is entitled to recover damages from Defendants to compensate for such infringement, including lost profits from lost sales, lost profits due to price erosion, and/or royalties, in an amount to be determined at trial, but in no event less than a reasonable royalty, and all other damages permitted pursuant to 35 U.S.C. § 284.

102. Defendants' ongoing acts of infringement of the '260 Patent have been committed and are being committed with full knowledge of Ember's rights in the '260 Patent, and Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constitute infringement of the '260 Patent and Defendants knew or should have known of that objectively high risk. Defendants' infringement of the '260 Patent has and continues to be willful and deliberate, entitling Ember to enhanced damages under 35 U.S.C. § 284.

103. Defendants' acts of infringement have caused and will continue to cause irreparable injury to Ember, for which Ember has no adequate remedy at law, unless and until Defendants are enjoined from further infringement by this Court pursuant to 35 U.S.C. § 283.

Considering the competitive relationship and balance of hardships between the parties, a permanent injunction is warranted and would be in the public interest.

**COUNT III**
**(Infringement of U.S. Patent No. 11,771,261)**

104. Ember incorporates by reference and realleges the averments set forth in the preceding paragraphs as though fully set forth herein.

105. On October 3, 2023, the Patent Office duly and legally issued the ’261 Patent. Ember is the owner, by assignment, of all right, title, and interest in and to the ’261 Patent, including the right to recover damages for past and future infringement.

106. Defendants have infringed and continue to infringe (literally and/or under the doctrine of equivalents) the ’261 Patent in this District and throughout the United States in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, and/or causing others to make, use, sell, offer for sale, and/or import, the Nextmug line of products, which practices one or more claims of the ’261 Patent.

107. For example, Defendants have infringed and continue to infringe the ’261 Patent by making, using, selling, offering for sale, and/or importing its Nextmug line of products, that includes each and every feature recited in at least claim 1 of the ’261 Patent.

108. The Accused Products are each “an actively heated mug” comprising “an outer circumferential wall” and an “inner circumferential wall,” as required by claim 1. The inner circumferential wall of the Accused Products “extends from a proximal portion to a base” and define “a chamber configured to receive and hold a liquid” as required by claim 1. Defendants’ marketing material describes the Accused Products as being “Temperature-Controlled Self Heating Mugs” and a “Heated Coffee Mug” and show images of mugs with an outer

circumferential wall, inner circumferential wall, base, and surfaces that are configured to hold a liquid, such as coffee. *See* www.nextmug.com. For example:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):




Nextmug Ultra (MMU-1101):




109. The Accused Products are also configured to have an "inner circumferential wall having a proximal portion with a first diameter and a distal portion with a second diameter smaller than the first diameter," as required by claim 1. As shown in the Accused Products' manuals, the Accused Products have tapered walls providing a different diameter on proximal and distal ends. *See, e.g.*, https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_

User_Manual_240712.pdf?v=1725648971; https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_Plus_User_Manual_240703.pdf?v=1725648971; https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_Go_User_Manual_240703.pdf?v=1725648968. For example:

Nextmug (MMA-1122):






Nextmug Plus (MMP-1122):





Nextmug Go (MTB-1122):





Nextmug Ultra (MMU-1101):





110. The Accused Products are also configured to have “an annular gap between the inner circumferential wall and the outer circumferential wall,” as required by claim 1. For example, Defendants’ website states that “[t]he exteriors of all Nextmugs are insulated from the interior liquid so that it is pleasantly warm - not hot - to the touch.” *See* https://nextmug.com/pages/help-center. Furthermore, the image of the Nextmug (MMA-1122),

below, shows a space between where the bottom portion meets the outer circumferential wall and the inner circumferential wall. This space forms a ring around the mug body:



Each of the Accused Products comprise a gap between the inner and out circumferential walls. For example:

Nextmug (MMA-1122):






Nextmug Plus (MMP-1122):





Nextmug Go (MTB-1122):




Nextmug Ultra (MMU-1101):




111. The Accused Products are also configured to have "a bottom portion attached to a distal end of the outer circumferential wall, the bottom portion spaced from the base to define a cavity therebetween" and a "heating system at least partially disposed in the annular gap or cavity" as required by claim 1. For example, as shown in the images below, each of the Accused Products comprise a bottom portion that defines a cavity (holding other component parts) that is attached to the distal end of the outer wall of the mug body:

Nextmug (MMA-1122):






Nextmug Plus (MMP-1122):






Nextmug Go (MTB-1122):





Nextmug Ultra (MMU-1101):








112. Defendants' website states that its products are intended to keep liquid in the mug heated. For example, the website states "Nextmug (14 oz) keeps coffee, tea, and other daily drinks at your perfect temperature from the first sip to the last" and "Keep your hot beverage at the perfect temperature. Simply select Warm (130°), Hot (140°), or Piping (150°) and enjoy for hours." *See* https://nextmug.com/products/nextmug.

113. The heating system of the Accused Products is also configured to have "one or more heating elements attached circumferentially to an outer surface of the distal portion of the inner circumferential wall and configured to actively heat at least the distal portion of the chamber, the one or more heating elements disposed between the outer circumferential wall and the inner circumferential wall," as required by Claim 1. For example, the Accused Products' heating element located in the cavity has a circular shape that wraps around the perimeter of the mug. When fully assembled, this heating element is connected to the outer surface of the distal portion of the inner wall of the mug. For example:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):



114. Defendants' website states that its products are intended to keep liquid in the mug heated. For example, the website states "Nextmug (14 oz) keeps coffee, tea, and other daily drinks at your perfect temperature from the first sip to the last" and "Keep your hot beverage at the perfect temperature. Simply select Warm (130°), Hot (140°), or Piping (150°) and enjoy for hours." *See* https://nextmug.com/products/nextmug. The heating element of the Accused Products is configured to actively heat at least the distal portion of the mug's chamber to keep the contents of the chamber warm.

115. The heating system of the Accused Products also are configured to have "one or more power storage devices," as required by claim 1. For example, as shown below, the Accused Products comprise a battery disposed in a cavity of the mug:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




116. Defendants' website also states that "[a]ll Nextmug products work exactly the same…undock your Nextmug and take it anywhere - the on-board, lithium-ion battery will ensure your warm beverage stays the perfect temperature." *See* https://nextmug.com/pages/help-center. Defendants' website also states "[t]he long-lasting, lithium-ion battery ensures your beverage is always the perfect temperature. The battery is fully encased inside the mug." *Id.*

117. The Accused Products' heating systems also have "circuitry configured to control an operation of the one or more heating elements to heat the liquid in the chamber to a predetermined temperature setting or user selected temperature setting," as required by claim 1. For example, as shown below, the Accused Products each have a circuitry configured to control operation of heating elements disposed in a cavity:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




118. The Accused Products' circuitry turns on power to its heating element upon detecting the presence of liquid in the chamber, and the Accused Products begin actively heating the liquid before its temperature drops below the user-selected temperature setting, such that the heating system operates to maintain the beverage at the selected temperature. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130 degrees), "Hot" (140 degrees) or "Piping" (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours." *See* https://nextmug.com/pages/help-center .

119. The Accused Products also are configured to have "a user interface electrically connected to the circuitry, the user interface having one or more selection members actuatable to control the heating system, wherein the one or more selection members are actuatable a) to turn off the one or more heating elements and b) to adjust a temperature setting to multiple user selected temperatures to control the operation of the one or more heating elements to heat the liquid in the chamber to the user selected temperature," as required by claim 1.

120. For example, each of the user manuals for the Accused Products describe that pressing the control button once turns on the mugs and activates the "Warm" setting. The user manuals further state that "[e]ach time you press the Control Button, it will cycle through the temperature settings on the mug." The Accused Products user manuals also show that the three temperature settings of "Warm", "Hot", and "Piping" are toggled upon pressing the button. For example:

Nextmug (MMA-1122):




https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971

Nextmug Plus (MMP-1122):

**Turning Mug On**

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)




**Adjusting Temperature**

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

Nextmug Go (MTB-1122):

**Turning Mug On**

Press Control Button once to turn mug On. (This will also set the mug to the Warm setting.)




**Adjusting Temperature**

Press Control Button to select your perfect Temperature Setting:




Please note: Each time you press the Control Button, it will cycle through the temperature settings on the mug, with the fourth press turning the mug Off.

Nextmug Ultra (MMU-1101):




121. The Accused Products also are configured to have "a visual indication screen configured to display a temperature, the visual indication screen being a hidden till-lit display," as required by claim 1. For example, the user manuals for the Accused Products show a visual indicator light panel with a "Temperature Setting" and "Progress Bar" positions near the bottom of the mug:

Nextmug :




https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971

Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):




Nextmug Ultra (MMU-1101):



122. Moreover, Defendants' website states that its "Smart Mug Technology" mugs include an "LED lights display" showing "battery life & real-time temperature." *See* https://nextmug.com/products/nextmug . As show below, the LED light indicating temperature is not visible before the mug is activated. The LED indicator light then becomes visible after the mug is activated.

Nextmug (MMA-1122)

Before Activation After Activation






https://www.amazon.com/Nextmug-Temperature-Controlled-Self-Heating-Coffee-Mug-Black/dp/B0B6JTX6NB/ref=ast_sto_dp_puis?th=1









Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




123. As demonstrated above, the Accused Products include components and features that satisfy each and every limitation recited in, and, therefore, infringe, claim 1 of the ’261 Patent.

124. As a direct and proximate result of Defendants’ infringement of the ’261 Patent, Ember has suffered and continues to suffer damage. Ember is entitled to recover damages from Defendants to compensate for such infringement, including lost profits from lost sales, lost profits due to price erosion, and/or royalties, in an amount to be determined at trial, but in no event less than a reasonable royalty, and all other damages permitted pursuant to 35 U.S.C. § 284.

125. Defendants' ongoing acts of infringement of the '261 Patent have been committed and are being committed with full knowledge of Ember's rights in the '261 Patent, and Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constitute infringement of the '261 Patent and Defendants knew or should have known of that objectively high risk. Defendants' infringement of the '261 Patent has and continues to be willful and deliberate, entitling Ember to enhanced damages under 35 U.S.C. § 284.

126. Defendants' acts of infringement have caused and will continue to cause irreparable injury to Ember, for which Ember has no adequate remedy at law, unless and until Defendants are enjoined from further infringement by this Court pursuant to 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties, a permanent injunction is warranted and would be in the public interest.

**COUNT IV**
**(Infringement of U.S. Patent No. 10,995,979)**

127. Ember incorporates by reference and realleges the averments set forth in the preceding paragraphs as though fully set forth herein.

128. On May 4, 2021, the Patent Office duly and legally issued the '979 Patent. Ember is the owner, by assignment, of all right, title, and interest in and to the '979 Patent, including the right to recover damages for past and future infringement.

129. Defendants have infringed and continue to infringe (literally and/or under the doctrine of equivalents) the '979 Patent in this District and throughout the United States in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, and/or causing others to make, use, sell, offer for sale, and/or import, the Nextmug line of products, which practices one or more claims of the '979 Patent.

130. For example, Defendants have infringed and continue to infringe the ’979 Patent by making, using, selling, offering for sale, and/or importing its Nextmug line of products, that includes each and every feature recited in at least claim 1 of the ’979 Patent.

131. Each of the Accused Products are “[a] beverage container with active temperature control, comprising a body having a chamber configured to receive and hold a liquid,” as required by claim 1.

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):




Nextmug Ultra (MMU-1101):




132. Defendants' marketing material describes the Accused Products as being "Temperature-Controlled Self Heating Mugs" and a "Heated Coffee Mug" and show images of mugs with a body configured to hold a liquid, such as coffee. *See* www.nextmug.com.

133. The Accused Products are also configured to have "a temperature control system, comprising one or more heating elements in thermal communication with at least a portion of the chamber," as required by claim 1.

134. For example, as shown below, each of the Accused Products has a heating element in contact with the mug surface that, when activated, can heat the bottom portion of the chamber that holds a liquid:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):



135. Defendants' website states that the products are intended to keep liquid in the mug heated. For example, the website states "Nextmug (14 oz) keeps coffee, tea, and other daily drinks at your perfect temperature from the first sip to the last" and "Keep your hot beverage at the perfect temperature. Simply select Warm (130°), Hot (140°), or Piping (150°) and enjoy for hours." *See* https://nextmug.com/products/nextmug. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130 degrees), "Hot" (140 degrees) or "Piping" (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours." *See* https://nextmug.com/pages/help-center .

136. The temperature control system of the Accused Products also has "circuitry configured to control an operation of the one or more heating elements" as required by claim 1.

137. For example, as shown below, the Accused Products have circuitry configured to control operation of heating elements disposed in a cavity:

Nextmug (MMA-1122):



Nextmug Plus (MMP-1122):



Nextmug Go (MTB-1122):



Nextmug Ultra (MMU-1101):




138. The Accused Products' circuitry turns on power to its heating element upon detecting the presence of liquid in the chamber, and that the Accused Products begin actively heating the liquid before its temperature drops below the user-selected temperature setting, such that the heating system operates to maintain the beverage at the selected temperature. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130 degrees), "Hot" (140 degrees) or "Piping" (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours." *See* https://nextmug.com/pages/help-center.

139. The temperature control system of the Accused products is also configured to have "one or more sensors configured to sense a temperature of the liquid and communicate sensed temperature information to the circuitry" as required by claim 1. For example, the user manuals for the Accused Products state that the "mug will maintain its temperature for up to several hours while undocked." https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971. The user manuals of the Accused Products also

show a “tracking Temperature” functionality, where “[y]our mug will calibrate the temperature of your beverage to the selected Temperature Setting.” https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971.

140. The user manual also discloses a “[l]ight sensor of current temperature” that will pulse or remain solid to indicate heating, cooling, or maintaining a temperature setting. https://cdn.shopify.com/s/files/1/0558/9565/4474/files/Nextmug_User_Manual_240712.pdf?v=1725648971. For example:

Nextmug (MMA-1122):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.

Light sensor of current temperature will pulse to indicate beverage is cooling.

Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

Nextmug Plus (MMP-1122):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.




Light sensor of current temperature will pulse to indicate beverage is cooling.




Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

Nextmug Go (MTB-1122):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.




Light sensor of current temperature will pulse to indicate beverage is cooling.




Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

Nextmug Ultra (MMU-1101):

**Tracking Temperature**

Your mug will calibrate the temperature of your beverage to the selected Temperature Setting. This is displayed on the Temperature Progress Bar.




Light sensor of current temperature will pulse to indicate beverage is heating.




Light sensor of current temperature will pulse to indicate beverage is cooling.




Light Sensors will remain solid & Nextmug will maintain Temperature Setting.

141. The Accused Products are also configured to sense the temperature of the liquid, and "when the sensed temperature of the liquid is greater than a predetermined temperature setpoint, the circuitry is operable to turn off or maintain in an off state power to the one or more heating elements such that the temperature of the liquid drops toward the predetermined temperature setpoint, the circuitry configured to turn on power to the one or more heating elements to add an amount of heat to the liquid while the sensed temperature of the liquid is above the predetermined temperature setpoint and before the sensed temperature of the liquid reaches the predetermined temperature setpoint," as required by claim 1.

142. The Accused Products' circuitry turns on power to its heating element upon detecting the presence of liquid in the chamber, and begins actively heating the liquid before its temperature drops below the user-selected temperature setting, such that the heating system operates to maintain the beverage at the selected temperature. Defendants' website also states that "[a]ll Nextmug products work exactly the same. By setting the mug to "Warm" (130 degrees), "Hot" (140 degrees) or "Piping" (150 degrees), the Nextmug will keep your beverage at the perfect temperature for hours." *See* https://nextmug.com/pages/help-center .

143. As demonstrated above, the Accused Products include components and features that satisfy each and every limitation recited in, and, therefore, infringe, claim 1 of the '979 Patent.

144. As a direct and proximate result of Defendants' infringement of the '979 Patent, Ember has suffered and continues to suffer damage. Ember is entitled to recover damages from Defendants to compensate for such infringement, including lost profits from lost sales, lost profits due to price erosion, and/or royalties, in an amount to be determined at trial, but in no

event less than a reasonable royalty, and all other damages permitted pursuant to 35 U.S.C. § 284.

145. Defendants' ongoing acts of infringement of the '979 Patent have been committed and are being committed with full knowledge of Ember's rights in the '979 Patent, and Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constitute infringement of the '979 Patent and Defendants knew or should have known of that objectively high risk. Defendants' infringement of the '979 Patent has and continues to be willful and deliberate, entitling Ember to enhanced damages under 35 U.S.C. § 284.

146. Defendants' acts of infringement have caused and will continue to cause irreparable injury to Ember, for which Ember has no adequate remedy at law, unless and until Defendants are enjoined from further infringement by this Court pursuant to 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties, a permanent injunction is warranted and would be in the public interest.

## COUNT V
## (Infringement of U.S. Design Patent No. D822,440)

147. Ember incorporates by reference and realleges the averments set forth in the preceding paragraphs as though fully set forth herein.

148. On July 10, 2018, the Patent Office duly and legally issued the 'D440 Patent. Ember is the owner, by assignment, of all right, title, and interest in and to the 'D440 Patent, including the right to recover damages for past and future infringement.

149. Defendants have infringed and continue to infringe the 'D440 Patent in this District and throughout the United States in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, and/or causing others to make, use, sell, offer for sale,

and/or import the Nextmug (MMA-1122) product, the ornamental design of which is substantially the same as, and would deceive an ordinary observer familiar with the prior art into believing is the same as, the claimed design of the ’D440 Patent.

150. The overall visual impression created by the Nextmug (MMA-1122) is substantially the same as the ornamental design claimed in the ’440 Patent when compared as a whole, as an ordinary observer would view them, giving such attention as a purchaser usually gives. Specifically:

151. The following is a comparison of a perspective top view of the ’D440 Patent (Fig. 1) with a perspective top view of the Nextmug product (MMA-1122) (right):



Fig. 1




152. The following is a comparison of a top view of the ’D440 Patent (Fig. 2) with a top view of the Nextmug product (MMA-1122) (right):



Fig. 2



153. The following is a comparison of a bottom view of the ’D440 Patent (Fig. 3) with a bottom view of the Nextmug product (MMA-1122) (right):



Fig. 3




154. The following is a comparison of a left side view of the ’D440 Patent (Fig. 4) with a left side view of the Nextmug product (MMA-1122) (right):



FIG. 4




155. The following is a comparison of a right side view of the ’D440 Patent (Fig. 5) with a right side view of the Nextmug product (MMA-1122) (right):



Fig. 5



156. The following is a comparison of a front view of the 'D440 Patent (Fig. 5) with a front view of the Nextmug product (MMA-1122) (right):



Fig. 6




157. The following is a comparison of a rear view of the 'D440 Patent (Fig. 5) with a rear view of the Nextmug product (MMA-1122) (right):



Fig. 7



158. The claimed design depicts a drinking vessel with a rounded, generally cylindrical to broadly tapered body, nearly vertical side walls, an open top rim, and softly rounded lower corners transitioning into a narrower base, such that the two share the same overall body silhouette and proportion. The Nextmug (MMA-1122) likewise presents a rounded, cylindrical body with a matte finish, slightly tapered sides, a broad curved upper section, and a narrower lower base.

159. The claimed design features a single, large, thick, rounded handle mounted on the right side of the vessel, forming a D-shaped loop that attaches near the upper rim and lower body, bows outward, and encloses an open interior space. The Nextmug (MMA-1122) likewise incorporates a single, large, rounded handle attached to the right side of the mug, forming a smooth D-shaped/loop profile with rounded corners connecting near the upper and lower body — the same size, shape, placement, and proportion of handle relative to the body as the claimed design.

160. In the claimed front view, the main body is roughly as tall as it is wide, and the handle increases the overall width by approximately one-third, a proportion closely mirrored by the Nextmug (MMA-1122)'s body-to-handle proportion when viewed from the front.

161. Any differences between the claimed design and the Nextmug (MMA-1122) — including the Nextmug (MMA-1122)'s surface branding (the "Nextmug" wordmark and "Warm/Hot/Piping" control labels near the base) and functional control elements such as a charging coaster and docking base — are minor, ancillary surface or functional additions that do not alter the overall visual impression created by the shared body silhouette and handle design,

and would not be noticed by an ordinary observer exercising the degree of care ordinarily given by a purchaser.

162. The resemblance between the claimed design of the 'D440 Patent and the design of the Nextmug (MMA-1122) is such as to deceive an ordinary observer, giving such attention as a purchaser usually gives, into believing that the Nextmug (MMA-1122) is the same as, or embodies, the patented design, thereby inducing that observer to purchase the Nextmug (MMA-1122) supposing it to be, or to be licensed or authorized under, the patented design.

163. As demonstrated above, the Nextmug (MMA-1122) infringes the 'D440 Patent.

164. As a direct and proximate result of Defendants' infringement of the 'D440 Patent, Ember has suffered and continues to suffer damage. Ember is entitled to recover damages from Defendants to compensate for such infringement, including lost profits from lost sales, lost profits due to price erosion, disgorgement of Defendants' profits, and/or royalties, in an amount to be determined at trial, but in no event less than a reasonable royalty, and all other damages permitted pursuant to 35 U.S.C. § 284.

165. Defendants' ongoing acts of infringement of the 'D440 Patent have been committed and are being committed with full knowledge of Ember's rights in the 'D440 Patent, and Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constitute infringement of the 'D440 Patent and Defendants knew or should have known of that objectively high risk. Defendants' infringement of the 'D440 Patent has and continues to be willful and deliberate, entitling Ember to enhanced damages under 35 U.S.C. § 284.

166. Defendants' acts of infringement have caused and will continue to cause irreparable injury to Ember, for which Ember has no adequate remedy at law, unless and until Defendants are enjoined from further infringement by this Court pursuant to 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties, a permanent injunction is warranted and would be in the public interest.

**COUNT VI**
**(Infringement of U.S. Design Patent No. D922,145)**

167. Ember incorporates by reference and realleges the averments set forth in the preceding paragraphs as though fully set forth herein.

168. On June 15, 2021, the Patent Office duly and legally issued the 'D145 Patent. Ember is the owner, by assignment, of all right, title, and interest in and to the 'D145 Patent, including the right to recover damages for past and future infringement.

169. Defendants have infringed and continue to infringe the 'D145 Patent in this District and throughout the United States in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing, and/or causing others to make, use, sell, offer for sale, and/or import, the Nextmug (MMA-1122) product, the ornamental design of which is substantially the same as, and would deceive an ordinary observer familiar with the prior art into believing is the same as, the claimed design of the 'D145 Patent.

170. The overall visual impression created by the Nextmug (MMA-1122) is substantially the same as the ornamental design claimed in the 'D145 Patent when compared as a whole, as an ordinary observer would view them, giving such attention as a purchaser usually gives.

171. The following is a comparison of a perspective view of the ’D145 Patent (Fig. 1) with a perspective view of the Nextmug product (MMA-1122) (right):



FIG. 1




172. The following is a comparison of a top view of the ’D145 Patent (Fig. 2) with a top view of the Nextmug product (MMA-1122) (right):



FIG. 2



173. The following is a comparison of a bottom view of the 'D145 Patent (Fig. 3) with a bottom view of the Nextmug product (MMA-1122) (right):



FIG. 3




174. The following is a comparison of a left side view of the 'D145 Patent (Fig. 4) with a left side view of the Nextmug product (MMA-1122) (right):



FIG. 4



175. The following is a comparison of a right side view of the 'D145 Patent (Fig. 5) with a right side view of the Nextmug product (MMA-1122) (right):



FIG. 5



176. The following is a comparison of a front view of the 'D145 Patent (Fig. 5) with a front view of the Nextmug product (MMA-1122) (right):



FIG. 6



177. The following is a comparison of a rear view of the ’D145 Patent (Fig. 5) with a rear view of the Nextmug product (MMA-1122) (right):



FIG. 7



178. The claimed design depicts a generally cylindrical vessel with a flat, open top rim, with gently tapering side walls, and a rounded lower section narrowing into a short, flattened base. The Nextmug (MMA-1122) presents the same general body form: a rounded cylindrical body with slightly tapered sides, a gently curved upper section, and a narrower lower base.

179. The claimed design’s proportions show a body that is substantially taller than it is wide, with nearly vertical walls curving inward only near the base. The Nextmug (MMA-1122) exhibits the same general proportion and taper pattern when viewed independent of its handle and control markings.

180. Any differences — including the Nextmug (MMA-1122)’s handle (unclaimed in the ’D145 Patent and therefore not at issue in this comparison), its surface branding, and its functional control elements — do not detract from the substantial similarity between the claimed

body silhouette and the Nextmug (MMA-1122)'s body silhouette, which is what an ordinary observer evaluating the claimed design would perceive.

181. The resemblance between the claimed design of the 'D145 Patent and the design of the Nextmug (MMA-1122) is such as to deceive an ordinary observer, giving such attention as a purchaser usually gives, into believing that the Nextmug (MMA-1122) is the same as, or embodies, the patented design, thereby inducing that observer to purchase the Nextmug (MMA-1122) supposing it to be, or to be licensed or authorized under, the patented design.

182. As demonstrated above, the Nextmug (MMA-1122) infringes the 'D145 Patent.

183. As a direct and proximate result of Defendants' infringement of the 'D145 Patent, Ember has suffered and continues to suffer damage. Ember is entitled to recover damages from Defendants to compensate for such infringement, including lost profits from lost sales, lost profits due to price erosion, disgorgement of Defendants' profits and/or royalties, in an amount to be determined at trial, but in no event less than a reasonable royalty, and all other damages permitted pursuant to 35 U.S.C. § 284.

184. Defendants' ongoing acts of infringement of the 'D145 Patent have been committed and are being committed with full knowledge of Ember's rights in the 'D145 Patent, and Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constitute infringement of the 'D145 Patent and Defendants knew or should have known of that objectively high risk. Defendants' infringement of the 'D145 Patent has and continues to be willful and deliberate, entitling Ember to enhanced damages under 35 U.S.C. § 284.

185. Defendants' acts of infringement have caused and will continue to cause irreparable injury to Ember, for which Ember has no adequate remedy at law, unless and until Defendants are enjoined from further infringement by this Court pursuant to 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties, a permanent injunction is warranted and would be in the public interest.

## PRAYER FOR RELIEF

Wherefore, Ember respectfully requests that this Court enter judgment and provide relief as follows:

A. That Defendants have infringed, and continue to infringe, the '870, '260, '261, '979, 'D440, and 'D145 Patents;

B. That Defendants, and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or privity therewith, either directly or indirectly, be permanently enjoined from any further direct, indirect, and/or joint infringement of the '870, '260, '261, '979, 'D440, and 'D145 Patents pursuant to 35 U.S.C. § 283;

C. That Defendants be ordered to account for and pay to Ember the damages resulting from Defendants' infringement of the '870, '260, '261, and '979 Patents, including lost profits, costs, and expenses, together with pre-judgment and post-judgment interest thereon, and all other damages permitted pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, and in any event an amount no less than a reasonable royalty;

D. That Defendants be ordered to account for and pay to Ember all Defendant's profits resulting from Defendants' sale of any and all products that infringe the 'D440 and 'D145 Patents pursuant to 35 U.S.C. § 289, and all other damages permitted pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured;

E. That Defendants be ordered to account for any infringing sales not presented at trial and that the Court award Ember additional damages for any such infringing sales;

F. That this case be adjudged an exceptional case pursuant to 35 U.S.C. § 285 and that Ember be awarded its reasonable attorneys' fees and costs incurred in connection with this action; and

G. That Ember be awarded any and all further legal and equitable relief that the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Ember hereby respectfully requests a trial by jury on all issues in this action so triable by right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 13, 2026

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: *<u>/s/ Timothy M. Reynolds</u>*

Timothy M. Reynolds
1801 13th St #300
Boulder, CO 80302
(303) 444-5955
timothy.reynolds@bclplaw.com

Leif H. Olson
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
(303) 861-7000
leif.olson@bclplaw.com

Alexander D. Walden
1290 Avenue of the Americas
New York, NY 1010
(212) 541-2395
alexander.walden@bclplaw.com

*Attorneys for Plaintiff Ember Technologies, Inc.*